FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ OCT 04 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

COURTNEY COY,

                     Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-3 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 11, 2018, Courtney Coy pled guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Courtney Coy is hereby sentenced to 168 months of incarceration, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Courtney Coy ("Defendant"). *See* Superseding Indictment, ECF No. 48. On June 11, 2018, Defendant pled guilty to Count One of the Superseding Indictment, charging Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), and admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act Two; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act Sixty-Six. *See* Plea Agreement ¶ 1.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

    **A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now 32 years old, was born on October 30, 1986 in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 87, ECF No. 663. Defendant is the sole child born to the consensual union of Barry Raymond Coy and Latrelle Smith. *Id.* Defendant's father was shot to death in approximately 1989. *Id.* Defendant's mother resides at the address of record in Brooklyn and currently works as an administrative assistant at Visiting Nurse Service. *Id.*

Defendant has one maternal half-brother who resides at the address of record in Brooklyn and works at a store. *Id.* ¶ 88. Defendant's half-brother is aware of Defendant's arrest and conviction and remains supportive. *Id.*

Defendant was raised by his mother and maternal grandmother in a "poor" household. *Id.* ¶ 89. Defendant's grandmother passed away in 2003 at age 52 from various health ailments, including breast cancer, bronchitis, and heart problems. *Id.* Defendant reported his childhood was "good and bad." *Id.* Defendant's mother and grandmother worked hard to provide for the family but were rarely home, leaving Defendant to care for his brother. *Id.* Defendant's uncle also lived with Defendant's family during his childhood and continues to live at the address of record to this day. *Id.* ¶ 90. Defendant reported his uncle physically abused him daily when his mother and grandmother were not home. *Id.*

Defendant has two children. *Id.* ¶¶ 92-94. Defendant's first child, now age 14, was born from a romantic relationship between Defendant and Shamarla Brown. *Id.* ¶ 92. Their relationship reportedly ended in 2003 because they were "kids" at the time. *Id.* Defendant's second child, now age 9, was born from a romantic relationship between Defendant and Nicole Ramachran. *Id.* ¶ 93. Defendant's relationship with Ms. Ramachran ended in 2015 due to irreconcilable differences, but she described Defendant as a "good person" and a "loving father." *Id.* ¶¶ 93-94. Prior to the instant arrest, Defendant saw his children daily and provided financial support "as needed." *Id.* ¶¶ 92-94. Defendant reported he is very close with his son. *Id.* ¶ 92.

Defendant lived at the address of record up to the time of his arrest. *Id.* ¶ 95. Defendant is currently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn. *Id.* ¶ 96. According to the Bureau of Prisons SENTRY database, Defendant has incurred disciplinary infractions for: (1) refusing to obey an order and being unsanitary or untidy; (2) refusing to obey

an order; and (3) being in an unauthorized area. *Id.* While at the MDC, Defendant has participated in the following educational courses: pretrial; entrepreneurship; resume management; SHU health; parenting inside out dad; finance pretrial; health education program; card making; art program all units; and anger management. *Id.* Defendant has also participated in a high school equivalency program. *Id.*

Defendant is physically healthy but has a history of traumatic injuries. *See id.* ¶¶ 98-101. In 2009, Defendant was stabbed in his arms, back, left lung, spleen, and left leg at a night club in Brooklyn, causing a one-week hospitalization. *Id.* He underwent surgery on his spleen and lung. *Id.* Defendant continues to have problems breathing, and certain parts of his stomach remain numb. *Id.* In 2010, Defendant was hit in the head with a police barricade, causing a laceration to his right eye. *Id.* ¶ 101.

Defendant advised he is mentally healthy but has a history of mental health issues. *Id.* ¶ 102. He previously saw a psychiatrist who treated him for depression. *Id.* In the past, Defendant was prescribed Trazodone and Remeron, which are both antidepressants. *Id.* Since May 22, 2015, Defendant has been receiving counseling sessions at the MDC, where Defendant reported he sometimes experiences irritability and anger. *Id.* ¶ 103. Medical staff at the MDC diagnosed Defendant with intermittent explosive disorder, alcohol use, cannabis use, and hallucinogen use but noted his depression has been resolved. *Id.* ¶ 104.

Defendant also has a history of substance abuse issues. Defendant stated he first consumed alcohol at age fifteen. *Id.* ¶ 107. Prior to the instant arrest, Defendant consumed alcohol daily to the point of intoxication. *Id.* Defendant has admitted he had a problem with alcohol. *Id.* Defendant smoked marijuana from when he was 10 years old until he was approximately 27 years old in 2013. *Id.* ¶ 108. In his twenties, Defendant also used MDMA on

4

weekends and consumed cough syrup several times per month for a period of two years. *Id.* ¶ 109. In 2010, a local court required Defendant to participate in an eighteen-month outpatient drug treatment program. *Id.* ¶ 110. After ten months in the outpatient program, Defendant provided a positive urinalysis and was thereafter placed in an inpatient treatment program. *Id.* After six months in the inpatient program, Defendant left the facility and relapsed. *Id.* Defendant was then sent to another facility, where he successfully completed the program. *Id.*

Defendant attended Lefferts Junior High School in Brooklyn from 1997 to 2000. *Id.* ¶ 113. Defendant attended the ninth through the eleventh grade at Erasmus Hall High School in Brooklyn from 2000 to 2003, when he withdrew to care for his son. *Id.* ¶ 112. In 2006, Defendant attended a trade school and completed coursework in Hazardous Materials Threat Assessment Program, Occupational Safety and Health Administration, and the confine space programs. *Id.* ¶ 114. Defendant advised he has completed half of the high school equivalency pre-test while at the MDC but has been unable to complete the second half because of the separation order in place at the facility with his co-defendants. *Id.* ¶ 115.

Since 1996, Defendant has held several jobs, including: packing grocery bags at the local grocery store; working at a Pancake House; cleaning up oil spills through Millers Environmental Group; and working at a moving company. *Id.* ¶ 117.

Defendant's criminal history includes three past convictions. On July 14, 2010 and April 1, 2011, Defendant was arrested for Criminal Sale of a Controlled Substance in the Fifth Degree. *Id.* ¶¶ 76-77. Defendant was sentenced for these offenses in Supreme Court, Brooklyn, NY on October 10, 2013 to 18 months custody concurrently and 6 months license suspension. *Id.* Defendant was paroled on October 31, 2014. *Id.* On October 30, 2013, Defendant was

sentenced to a conditional discharge for Disorderly Conduct in Criminal Court, Brooklyn, NY. *Id.* ¶ 78.

With respect to the instant offense, Defendant was a member of the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"). PSR ¶¶ 10, 40. The SG was an offshoot of the OGC that included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey Crips, the Bosses in Business, and the Bloods. *Id.* ¶ 6. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and they have committed acts of violence, including murder, attempted murder, robbery, assault, and other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 8.

With respect to Racketeering Act Two, members of the OGC sold cocaine base in New York, Connecticut, and West Virginia and shared drug suppliers, drug turf, and customers. *See id.* ¶¶ 14-21. For his part, Defendant conspired to distribute cocaine base between August 9, 2013 and May 12, 2015. *Id.* ¶¶ 14-15. Defendant worked with co-defendants Malik Campbell, Parris Desuze, and Leonard Barletto to obtain and distribute cocaine base from multiple suppliers, including co-defendants Cory Harris and Jeffrey Joseph and dealers they identified as "Un" and "Ice." *Id.* ¶ 17. They shared suppliers and turf with co-defendants Stanley Cherenfant, Steven Cherenfant, and Stephon Rene. *Id.*

With respect to Racketeering Act 66, Defendant conspired with co-defendants Barletto, Desuze, Solomon Artis, and Andre Holman to murder John Doe #5 and John Doe #6 on May 12,

2015. *Id.* ¶ 35. The conspiracy was thwarted only because law enforcement officials intercepted telephone calls pursuant to a judicially authorized wiretap among Defendant, Artis, Barletto, and Coy and arrested them before they could carry out the murders. *Id.* ¶¶ 35, 37. The defendants believed John Doe #5, John Doe #6, and a third individual—all of whom were affiliated with the gang Bosses in Business—were responsible for the murder of a member of the OGC named Kareem Mitchell. *Id.* ¶ 36.

Artis called Desuze and reported John Doe #5 and John Doe #6 were in the East Flatbush section of Brooklyn. *Id.* ¶ 37. After a series of intercepted phone calls among Defendant, Barletto, and Desuze about the locations of the two men, during which the callers confirmed they had guns, law enforcement officers observed Barletto, Defendant, and Holman together in a car parked on the block they expected to find the victims. *Id.* After Barletto, Defendant, and Holman stepped out of the car and stood around the corner, Barletto, Defendant, and Desuze were arrested. *Id.* On May 13, 2015, pursuant to a valid search warrant, law enforcement officials searched the car in which Barletto, Defendant, and Holman sat and found three firearms and a quantity of cocaine base. *Id.* ¶ 38. The firearms were located near where each of Holman, Barletto, and Defendant had been sitting. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant conspired to kill two individuals in support of a violent and dangerous gang. Any violence that would have transpired would undoubtedly have endangered the community at large. These murders would have been carried out but for the Government's discovery of the conspiracy pursuant to a judicially authorized wiretap. Moreover, Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the OGC and the SG. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Plea Agreement ¶ 1. In connection with that conspiracy, Defendant admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act Two; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act Sixty-Six. *Id.*

Defendant faces a maximum term of imprisonment of 20 years. *See* 18 U.S.C. § 1963(a).[1] Defendant also faces a maximum term of supervised release of three years, *id.* §

---

[1] Probation argues the appropriate statutory maximum is life imprisonment because Defendant pled guilty to a Class A felony, rendering the statutory maximum term life imprisonment. PSR ¶ 103 & n.1 (citing 18 U.S.C. §

3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b); mandatory restitution in the full amount of each victim's losses as determined by the Court, *see id.* §§ 3663A, 3664; and a special assessment of $100.00, *id.* § 3013. Defendant is statutorily eligible for between one and five years probation because he pled guilty to a Class C felony. *Id.* § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties dispute the offense level applicable to Defendant. Probation argues the adjusted offense level applicable to Defendant is 32. According to Probation, the appropriate Guideline for this 18 U.S.C. § 1962(d) offense is USSG § 2E1.1(a)(2), which applies to unlawful conduct relating to racketeer influenced and corrupt organizations and instructs the Court to apply the base offense level applicable to the underlying racketeering activity. With respect to Racketeering Act 2, Probation applies USSG § 2D1.1(c)(4), which pertains to offenses involving at least 840 grams but less than 2.8 kilograms of cocaine base and provides a base offense level of 32. PSR ¶ 49. Probation adds an additional 2 levels pursuant to USSG § 2D1.1(b)(1) because

---

1963(a)). Under Probation's view that Defendant's conduct is a Class A felony, Defendant would also face: a maximum term of supervised release of five years, 18 U.S.C. § 3583(b)(1); a maximum fine of $250,000.00, *id.* § 3571(b)(3); mandatory restitution, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013. Defendant would be ineligible for probation if Count One is a Class A felony. *Id.* § 3561(a).

Defendant and the Government have a different view. Peter Quijano, Esq., counsel for Desuze, filed a letter on behalf of several defendants, including Defendant, setting forth their position as to the statutory maximum. Mar. 1, 2019 Letter, ECF No. 699. Mr. Quijano advised that when the parties entered into their plea agreements, they intended "to enter into a plea of guilty to a violation of a crime which would result in a statutory maximum of 20 years." *Id.* at 2. Counsel requested "the Court SO ORDER that the Statutory Provisions regarding custody is a maximum term of imprisonment of twenty (20) years for . . . Courtney Coy." *Id.* The Government filed a letter joining the defendants' request. Mar. 4, 2019 Letter, ECF No. 701. On March 4, 2019, the Court granted the requests of defense counsel and the Government and ordered the statutory maximum applicable to Defendant is 20 years. ECF Nos. 702, 703.

9

the instant offense involved the possession of firearms, yielding an adjusted offense level of 34. *Id.* ¶ 50. With respect to Racketeering Acts 66A and 66B, Probation applies USSG § 2A1.5, which pertains to conspiracy to commit murder and supplies a base offense level of 33 as to each count. *Id.* ¶¶ 55-66.

Probation then adds 3 points to the highest adjusted offense level for a multiple count adjustment pursuant to USSG §§ 3D1.4(a)–(c), assigning one unit to each of Counts 2, 66A, and 66B. *Id.* ¶¶ 67-70. This yields a combined offense level of 37. *Id.* ¶ 70. Probation also believes a two-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a), a one-point reduction for Defendant timely notifying the Government of his intention to plead guilty, and a two-point reduction for global resolution pursuant to 5K2.0 are warranted, yielding a total adjusted offense level of 32. *Id.* ¶¶ 72-74, 139; Probation Sentence Recommendation at 2, ECF No. 663-1.

Defendant and the Government argue this Court should implement the Guidelines calculation provided in the Plea Agreement, which yields a total offense level of 31. Def. Sentencing Mem. ("Def. Mem.") at 1-2, ECF No. 799; Gov't Sentencing Mem. ("Gov't Mem.") at 3, ECF No. 804. As the Government reports, "[t]he offense level calculation in the PSR is one level higher than the calculation in the plea agreement because the Probation Department treated [Racketeering Act] 66 as two separate acts, increasing the offense level by one point." Gov't Mem. at 3 n.1; *see also* PSR ¶¶ 67-70. The Plea Agreement does not divide Racketeering Act 66A and 66B; rather, it assigns one unit to each of Racketeering Acts 2 and 66 for the multiple-count adjustment, providing for an increase of two offense levels pursuant to USSG §§ 3D1.4(a)–(c). Plea Agreement ¶ 2. According to Defendant and the Government, Defendant's adjusted offense level should therefore be 36. Defense counsel and the Government also agree

10

Defendant should receive a two-point reduction for acceptance of responsibility, a one-point reduction for timely notifying the Government of his intention to plead guilty, and a two-point reduction for global resolution, yielding a total offense level of 31. *See* Gov't Mem. at 3; Def. Mem. at 1-2, 5.

Defendant's past criminal convictions, described *supra*, yield a criminal history score of eight, establishing a criminal history category of IV. With Probation's calculation of an Offense Level of 32 and Criminal History Category of IV, the Guidelines recommend a term of incarceration of between 168 to 210 months. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, USSG § 5D1.2(a)(2), and a fine of between $17,500.00 and $175,000.00, *id.* §§ 5E1.2(c)(3), (h)(1).

With the Government's and Defendant's calculation of an Offense Level of 31 and Criminal History Category of IV,[2] the Guidelines recommend a term of incarceration of between 151 and 188 months. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, *id.* § 5D1.2(a)(2) and a fine of between $15,000.00 and $150,000.00, *id.* §§ 5E1.2(c)(3), (h)(1).

Probation argues a Level 32, Criminal History Category IV sentence of 168 months is appropriate in this case. PSR Sentence Recommendation at 1-2, ECF No. 663-1. The Government argues the Court should impose a Level 31, Criminal History Category IV sentence of between 151 and 188 months. Gov't Mem. at 1, 3, 6. Defendant argues the Court should impose a sentence of 121 months or less, "in keeping with the general nature of [the plea

---

[2] The Plea Agreement estimated Defendant's criminal history category was II and therefore provided an initial estimate of 121 to 151 months. Plea Agreement ¶ 2.

11

negotiations] ..., his Offender Characteristics[,] and other 3553 sentencing factors." Def. Mem. at 5.

The Court finds the appropriate total offense level is 31, which, with Criminal History Category IV, yields a guidelines imprisonment range of 151 to 188 months of incarceration. The Guidelines further suggest Defendant is ineligible for probation because the applicable guideline range is in Zone D of the sentencing table. USSG § 5B1.1, n.2. Probation notes there is no evidence Defendant has the ability to pay a fine. PSR ¶ 123.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement ... issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996,

restitution is mandatory pursuant to 18 U.S.C. § 3663A and USSG § 5E1.1(a)(1). No victim impact statement is currently available for John Doe #5 or John Doe #6. PSR ¶ 39. As a result, the specific amounts owed to the individual victims are unknown, and restitution cannot be determined with accuracy. *Id.* Nevertheless, this Court reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims. 18 U.S.C. § 3664(d)(5).

## CONCLUSION

A sentence of 168 months of incarceration, 3 years of supervised release (with special conditions), no fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein. The Court further recommends to the Bureau of Prisons that Defendant serve his sentence close to the New York City area.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 4, 2019
Brooklyn, New York